John W. Leardi
Nicole P. Allocca
Elizabeth A. Rice
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
609-799-5150

Leslie Howard
COHEN HOWARD, LLP
766 Shrewsbury Ave., Suite 200
Tinton Falls, NJ 07724
732-747-5202

*Counsel for Plaintiffs
and the Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH F. TAMBURRINO, M.D., as an authorized representative of his patient L.K., and TAYLOR THEUNISSEN, M.D., as an authorized representative of his patient B.W., on behalf of themselves and on behalf of all others similarly situated, | Case No. 21-cv-12766 |
| *Plaintiffs,* | **CLASS ACTION COMPLAINT** |
| - v. - | |
| UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE LLC, OXFORD HEALTH PLANS, LLC, and OXFORD HEALTH INSURANCE, INC., | |
| *Defendants.* | |

Plaintiffs Joseph F. Tamburrino, M.D. ("Dr. Tamburrino"), as an authorized representative of his patient L.K., and Taylor Theunissen, M.D. ("Dr. Theunissen"), as an authorized representative of his patient B.W. (collectively, "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated, bring the following Class Action Complaint against Defendants UnitedHealth Group Inc., United Healthcare Services, Inc., United Healthcare Insurance

Company, United HealthCare Service LLC, Oxford Health Plans, LLC, and Oxford Health Insurance, Inc. (collectively, "United"), and allege as follows:

## NATURE OF THE ACTION

1.     Breast cancer is a serious disability that affects one out of eight women nationwide. Federal and State laws have been adopted to protect women from abuses related to coverage for breast reconstruction following a mastectomy. Plaintiffs, as the authorized representatives of their breast-cancer-survivor patients, on behalf of themselves and a putative class, bring this action in response to the uniform and unlawful acts of United to systematically deny benefits for post-mastectomy breast reconstruction when performed by assistant surgeons or co-surgeons.

2.     United insures and administers health plans, many of which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461 (the "United Plans"). In that role, United receives, reviews, and processes benefits claims for services rendered by in-network and out-of-network medical providers.

3.     Under the Women's Health Cancer Rights Act of 1998 ("WHCRA") 29 U.S.C. § 1185b, adopted as part of ERISA, once an ERISA plan provides coverage for a mastectomy, coverage is required to be provided for breast reconstruction in a manner determined by the member and her physician. United's Plans must therefore provide coverage for breast reconstruction after a mastectomy under WHCRA. WHCRA: (i) requires that post-mastectomy breast reconstruction surgery be covered under the terms of United Plans; and (ii) prohibits claims administrators, like United, from placing unreasonable restrictions or limitations on reimbursement for post-mastectomy breast reconstruction. Notably, WHCRA applies to post-mastectomy breast reconstruction even in the absence of a diagnosis of breast cancer.

4.     Unfortunately, United has a uniform practice and procedure in place that makes it unreasonably difficult for patients insured through its plans to obtain benefits a particular type of

2

post-mastectomy breast reconstruction known as DIEP Flap when performed by plastic surgeons such as Dr. Tamburrino and Dr. Theunissen. DIEP flap microsurgery uses the fat and skin from a patient's abdomen to make a new breast. DIEP stands for "deep inferior epigastric perforator," which is the blood supply to fat and skin of the abdomen. DIEP flap microsurgery is a lengthy (8-12 hours), complex procedure that requires multiple surgeons to be performed safely. But it provides significantly better cosmetic results, has fewer donor site complications, is muscle-sparing, and presents a lower risk of reconstruction failure.

5.     Nevertheless, United has instituted a uniform claim processing and reimbursement policy that denies coverage for DIEP flap microsurgery when the performing surgeons work as either assistant surgeons or as co-surgeons. Specifically, United routinely and consistently denies benefits for assistant or co-surgeon fees charged for service code S2068 (Breast reconstruction with deep inferior epigastric perforator (DIEP) flap or superficial inferior epigastric artery (SIEA) flap, including harvesting of the flap, microvascular transfer, closure of donor site and shaping the flap into a breast, unilateral) because this code is purportedly not included in the "service code list" it maintains to create payment policies for assistant surgeons and co-surgeons. Yet, United recognizes the code in its pre-surgery authorizations, guidelines, and when a primary surgeon reports service code S2608 without an assistant surgeon or co-surgeon modifier.

6.     In other words, United has a uniform claim processing and reimbursement policy that denies coverage to United members whose plastic surgeons perform post-mastectomy DIEP flap microsurgery as either assistant surgeons or as co-surgeons based on United's blanket determination that multiple surgeons are not "medically necessary" to safely perform the procedure. This uniform denial policy is belied by industry practice and the overwhelming balance of medical literature, which indicates that ***all*** breast reconstruction microsurgery should be

performed by two surgeons, and that single-surgeon breast reconstruction has significantly longer operating room time, and higher wound occurrences that require surgical correction.

7.      Plaintiffs Dr. Tamburrino and Dr. Theunissen—acting as duly-authorized representatives for their respective patients—bring this action on behalf of L.K. and B.W., as well as all other similarly-situated members of United Plans whose claims for benefits were wrongfully denied based on United's arbitrary and capricious claim processing and reimbursement policy relative to post-mastectomy DIEP flap microsurgery when the performing physicians worked as either assistant surgeons or as co-surgeons.

## THE PARTIES

**A.      Dr. Tamburrino as an Authorized Representative of his Patient L.K.**

8.      With nearly two decades of experience in the fields of plastic and reconstructive breast surgery, Dr. Tamburrino serves patients throughout the Greater Philadelphia area at Tamburrino Plastic Surgery & Medspa. Dr. Tamburrino is most often sought after for his techniques in breast reconstruction (utilizing DIEP flaps and implants).

9.      After graduating from Temple University with a bachelor's degree in chemistry, Dr. Tamburrino went on to finish both his masters in biochemistry and his medical degree at Thomas Jefferson University. He then completed his general surgery residency at Temple University Hospital. Dr. Tamburrino went on to complete his plastic surgery residency at Cleveland Clinic Florida. Following this, he received fellowship training in microvascular breast reconstruction from the University of California at Los Angeles (UCLA). Dr. Tamburrino also attended a fellowship in aesthetic surgery at Lenox Hill Hospital in New York City.

10.     Dr. Tamburrino is board certified by both the American Board of Plastic Surgery and the American Board of Surgery. He is most is most renowned for his innovative work with breast reconstruction for patients who have survived cancer.

4

11.     L.K. executed an assignment of benefits and a DAR form in favor of Dr. Tamburrino, with respect to any claims, appeals, and litigation associated with her DIEP flap microsurgery. The DAR form, entitled "Assignment of Benefits/Designated Authorized Representative" and a subsequently executed "Limited Power of Attorney" executed by L.K. in favor of Dr. Tamburrino are attached hereto as **Exhibit A** (redacted).

**B.     Dr. Theunissen as an Authorized Representative of his patient B.W.**

12.     Dr. Theunissen is one of the top plastic surgeons in Baton Rouge and surrounding Louisiana areas. He combines the latest surgical techniques with state-of-the-art technology to help his patients achieve the more natural and balanced facial, body, and breast results they desire.

13.     Dr. Theunissen graduated from Louisiana State University Medical School and is board certified surgeon by the American Board of Plastic Surgery. He is an active member of the American Board of Plastic Surgery, the American Society of Plastic Surgeons, and the American Society of Maxillofacial Surgery. Dr. Theunissen is also an Associate Clinical Faculty member at both LSU and Tulane University.

14.     Dr. Theunissen's plastic surgery practice has a special emphasis on breast reconstruction for women who are about to undergo a mastectomy or have already had a mastectomy. He offers the latest in muscle sparing reconstructive breast surgery.

15.     B.W. executed an assignment of benefits and a DAR form in favor of Dr. Theunissen, with respect to any claims, appeals, and litigation associated with her DIEP flap microsurgery. The DAR form, entitled "Assignment of Benefits/Designated Authorized Representative" and a subsequently executed "Limited Power of Attorney" executed by B.W. in favor of Dr. Theunissen are attached hereto as **Exhibit B** (redacted).

### C.     Defendant UnitedHealth Group Inc. and its Affiliates.

19.     Defendant UnitedHealth Group Inc. issues, administers, and makes benefit determinations related to ERISA health care plans through its various wholly-owned and controlled subsidiaries, including Defendants United Healthcare Services, Inc., United Healthcare Insurance Company, United HealthCare Service LLC, Oxford Health Plans, LLC, and Oxford Health Insurance, Inc. Defendant UnitedHealth Group Inc. operates as, and owns the trademark to, "UnitedHealthcare." UnitedHealth Group Inc. has developed a uniform policy that led to the denials of Plaintiffs' appeals and acted, where possible, to incorporate such guidelines into health insurance plans issued and administered by United. Moreover, UnitedHealth Group Inc. has caused Defendants United Healthcare Services, Inc., United Healthcare Insurance Company, United HealthCare Service LLC, Oxford Health Plans, LLC, and Oxford Health Insurance, Inc., to promulgate and apply such guidelines in processing claims and appeals.

20.     Defendant United HealthCare Insurance Company is a wholly-owned and controlled subsidiary of Unimerica, Inc., which is wholly-owned and controlled by Defendant United HealthCare Services, Inc. It is the underwriter of insurance provided by United HealthCare Services, Inc., and certain state-level subsidiaries/affiliates. It participates in the benefit claim and appeals administration process related to United Plans insured or administered by such subsidiaries/affiliates, and issues and administers other United Plans, most of which are governed by ERISA, whether fully-insured or self-insured by a private employer.

21.     Defendant United HealthCare Service LLC is a wholly-owned and controlled subsidiary of Defendant United HealthCare Insurance Company and serves as its agent with respect to benefits claim processing and adjudication.

22.     Defendant Oxford Health Plans, LLC is a wholly-owned and controlled subsidiary of UnitedHealth Group Inc. and serves as its agent with respect to benefits claims processing and

adjudication.

23.     Defendant Oxford Health Insurance, Inc. is a wholly-owned and controlled subsidiary of UnitedHealth Group Inc. and serves as its agent with respect to benefits claims processing and adjudication.

24.     Defendants, other than UnitedHealth Group Inc., do not operate independently and in their own interests, but serve solely to fulfill the purpose, goals, and policies of Defendant UnitedHealth Group Inc.

25.     United maintains an office at 170 Wood Avenue South, Iselin, New Jersey 08830.

## JURISDICTION AND VENUE

26.     United's actions in administering employer-sponsored health care plans, including processing appeals of adverse benefit determinations, are governed by ERISA. Thus, subject-matter jurisdiction is appropriate over Plaintiffs' claims under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

27.     Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2) based on Dr. Tamburrino maintaining an office in New Jersey at 1765 Springdale Road, Suite C1, Cherry Hill, NJ 08003. Venue is also appropriate under 29 U.S.C. § 1132(e)(2) because Defendants may be found here and are authorized to do business in New Jersey, either directly or through wholly owned and controlled subsidiaries.

28.     This Court has personal jurisdiction over Defendants because Defendants have substantial contacts with, and regularly conduct business in, New Jersey.

## FACTS

**A.     United's Uniform DIEP Multiple Surgeon Denial Policy.**

29.     United is in the business of insuring and administering health plans, many of which are governed by ERISA. Among other things, this means that United is responsible for interpreting

written plan terms, making coverage determinations, causing benefit payments to be made or denied, providing disclosures relative to adverse benefit determinations, and adjudicating appeals of adverse benefit determinations. As such, United is a fiduciary under ERISA.

30.     In some instances, United provides a fully-insured product in which the employer pays a per-employee premium to United, and United assumes the risk of providing health coverage for insured events.

31.     In other instances, United acts as an administrator of the insurance plan for the employer and makes all benefit determinations. As an administrator, United authorizes benefit checks to be issued out of bank accounts which United controls. Periodically, United will notify the sponsors of the self-funded plans of the need to replenish those accounts so that benefits payments can be made. But United nevertheless continues to control those accounts and is fully responsible for processing the insurance claims and making the determination whether to issue benefits payments from those accounts.

32.     In both instances, United has a substantial financial incentive to minimize expenditures for the plans, and United bears at least a portion of the risk. This financial interest results in an inherent conflict of interest for United in the administering of claims. For example, United often provides "stop loss" coverage to self-insured plans where claims in the aggregate exceed a pre-determined amount during a plan year or a specific amount with respect to single member or beneficiary. United is also incentivized to minimize payments for self-insured plans to meet financial metrics to increase administrative fees paid under its Plans. The claims at issue here involve both fully-insured and self-insured plans.

33.     With respect to all United Plans, United serves as the claims administrator responsible for determining whether any given claim is covered by the corresponding United Plan

and effectuating any resulting benefit payment. United exercises complete control over such decisions and has adopted its own internal policies and procedures to justify such denials without any involvement, participation, or express approval by employers or plan sponsors. As such, United is a fiduciary with respect to all United Plans covered under ERISA.

34.     Under the terms of all United Plans, United is obligated to cause the plans to make benefit payments when someone insured by one of those plans (a "United Member") obtains health care treatment that is covered by the terms of that plan (a "Covered Service"). Most United Plans, and all those at issue in this action, allow United Members to receive insurance benefits for services rendered by both in-network ("INET") providers and out-of-network ("ONET") providers.

35.     A DIEP flap microsurgery is a type of microvascular breast reconstruction in which blood vessels called deep inferior epigastric perforators, as well as the skin and fat connected to them, are removed from the lower abdomen, and transferred to the chest to reconstruct a breast after mastectomy without the sacrifice of any of the abdominal muscles. It requires an incision into the abdominal (rectus) muscle, as the blood vessels, or perforators, required to keep the tissue alive lie just beneath or within this muscle. Therefore, a small incision is made in the abdominal muscle to access the vessels. After the skin, tissues, and perforators (collectively known as the "flap") have been dissected, the flap is transplanted and connected to the patient's chest using microsurgery. The microsurgeon then shapes the flap to create the new breast. As no abdominal muscle is removed or transferred to the breast, patients typically see a lower risk of losing abdominal muscle strength and may experience a faster recovery compared to other procedures. Thus, the DIEP flap is the gold-standard for post-mastectomy breast reconstruction.

36.     DIEP flap breast reconstruction is a far more complicated operation than other autologous or alloplastic options, but it provides significantly better cosmetic results, which leads

to better psychological outcomes, with a much lower risk of reconstruction failure. Moreover, recent studies comparing abdominal results with other procedures and the muscle-sparing DIEP flap procedure show that abdominal wall hernias occur far less frequently in DIEP patients.

37.     Medical literature supports that microvascular breast reconstruction, including the DIEP flap microsurgery, should be performed by two microsurgeons, and that single-surgeon breast reconstruction has significantly longer operating room time, and higher wound occurrences that required surgical correction. *See, e.g.,* N. Haddock, "Co-Surgeons in Breast Reconstructive Microsurgery," *J. Microsurgery*, 2018: Jan; 38(1); 14-20. Another study found that operative time and length of stay were both significantly lower when a co-surgeon or assistant surgeon was present. AJ Bauermeister, "Impact of Continuous Two-Team Approach in Autologous Breast Reconstruction," *J. Reconstr. Microsurg*., 2017; May; 33(4); 298-304.

38.     Other studies have produced identical results, concluding: "The use of two operating surgeons has demonstrable effects on the outcomes of microsurgical breast reconstruction.  The addition of a second surgeon significantly decreases operating room time and shortens hospital length of stay in both unilateral and bilateral reconstruction.  It also significantly decreases donor-site wound healing complications." K.E. Weichman, "The Impact of Two Operating Surgeons on Microsurgical Breast Reconstruction," *Plast. Reconstr. Surg*., 2017 Feb.; 139(2); 277-284; S.N. Razdan, "The Impact of the Cosurgeon Model on Bilateral Autologous Breast Reconstruction," *J. Reconstr. Microsurg*. 2017; 33(09); 624-629.

39.     A study specific to the DIEP surgical procedure came to the identical conclusion. O. Canizares, "Optimizing Efficiency in Deep Inferior Epigastic Perforator Flap Breast Reconstruction," *Ann. Plast. Surg.*, 2015 Aug.; 75(2); 186-92.

40.     United Plans must cover breast reconstruction after a mastectomy under the

Women's Health and Cancer Rights Act ("WHCRA"), 29 U.S.C. § 1185b. WHCRA: (i) requires that post-mastectomy breast reconstruction surgery be a covered benefit under the terms of United's Plans; and (ii) prohibits United from placing unreasonable restrictions or limitations on reimbursement for post-mastectomy reconstruction. WHCRA applies to post-mastectomy breast reconstruction surgical procedures even in the absence of a diagnosis of breast cancer.

41.     Notwithstanding the forgoing, United has instituted a uniform claim processing and reimbursement policy that denies benefits for DIEP flap microsurgery when the performing physicians work as either assistant surgeons or as co-surgeons (the "Uniform DIEP Multiple Surgeon Denial Policy"). The Uniform DIEP Multiple Surgeon Denial Policy, as consistently applied by United when adjudicating benefit claims and appeals, states that United Plans do not cover payment for assistant or co-surgeon fees charged for service code S2068 (Breast reconstruction with deep inferior epigastric perforator (DIEP) flap or superficial inferior epigastric artery (SIEA) flap, including harvesting of the flap, microvascular transfer, closure of donor site and shaping the flap into a breast, unilateral) because this code is not included in the "service code list" United maintains to create payment policies for assistant surgeons and co-surgeons.

42.     The Uniform DIEP Multiple Surgeon Denial Policy is based on United's across-the-board determination that multiple surgeons are not "medically necessary" to safely perform the DIEP flap procedure, regardless of the individual circumstances of each case.

43.     In adopting and implementing the Uniform DIEP Multiple Physician Denial policy, United claims adjudication engines are programmed to deny any claim submitted for a DIEP flap reconstruction using Healthcare Common Procedure Coding System (HCPCS) S2608 when either the -80 (Assistant Surgeon) or -62 (Co-Surgeon) coding modifiers are also reported. Prior to 2017, United did not maintain this blanket policy and nothing has changed in the medical literature since

then that would justify United being the only major claims administrator to adopt this new uniform reimbursement policy. Since that date, thousands if not tens of thousands of claims have been denied by United at the expense of highly skilled surgeons and their patients.

44.     For services reported under S2608 with the -80 modifier, United's Explanation of Benefit ("EOB") statements provide two explanations for the denial. First, United utilizes denial code PR54, which indicates "PATIENT RESPONSIBILITY – MULTIPLE PHYSICIANS/ASSISTANTS ARE NOT COVERED IN THIS CASE." Second, United utilizes denial code KV, which indicates "THIS PROCEDURE CODE IS NOT ELIGIBLE FOR ASSISTANT SURGEON. THEREFORE BENEFITS ARE NOT PAYABLE."

45.     For services reported under S2608 with the -62 modifier, United's Explanation of Benefit ("EOB") statements provide two explanations for the denial. First, United AGAIN utilizes denial code PR54, which indicates "PATIENT RESPONSIBILITY – MULTIPLE PHYSICIANS/ASSISTANTS ARE NOT COVERED IN THIS CASE." Second, United utilizes denial code I2, which indicates "PAYMENT FOR THIS SERVICE IS DENIED. THE PROCEDURE CODE SUBMITTED WITH A MODIFIER -62 IS NOT ELIGIBLE FOR CO-SURGEON REIMBURSEMENT. THE PHYSICIAN OR HEALTH CARE PROFESSIONAL SHOULD SUBMIT A CORRECTED CLAIM."

46.     When United Members and/or their plastic surgeons appeal these claims denials, the appeals are rejected by United out-of-hand, based solely on the Uniform DIEP Multiple Surgeon Denial Policy, and without any individual consideration of the patient or the clinical circumstances underlying the procedure in question.

**B.      Dr. Tamburrino's Claims and Appeals on Behalf of his Patient L.K.**

47.     L.K. is a 58-year-old United Member, with her health benefit plan sponsored by her employer, Business One Consulting, but administered by United.

48.     On June 26, 2018, L.K. presented to Doylestown Hospital for right breast mastectomy followed immediately by DIEP flap reconstruction. The mastectomy was performed by Donna M. Angotti, M.D, Medical Director of the Breast Cancer Program at Doylestown Hospital. The DIEP flap reconstruction was performed Dr. Tamburrino and Keith M. Blechman, M.D. Prior authorization was received for these services under authorization no A048220008. Dr. Tamburrino's operative report expressly noted that:

> CO-SURGEON: Keith Blechman, M.D. Please note that Dr. Blechman is used as a co-surgeon for the breast reconstruction with deep inferior epigastric perforator flap. A co-surgeon is needed on this case due to the multiple independent procedures that are occurring simultaneously including elevation of the flap as well as recipient vessel exposures in the chest. An individual who is fellowship trained in microsurgery needs to function as a co-surgeon. Dr. Blechman meets these requirements.

49.     Following L.K's procedure, Dr. Tamburrino submitted a bill to United for the services he personally rendered during L.K.'s DIEP flap reconstruction. The service codes were billed by Dr. Tamburrino and paid by United as follows:

| Service Code | Billed Amount | Paid Amount |
| --- | --- | --- |
| HCPCS S2068-RT-62 | $50,000.00 | $0.00 |
| CPT 38530 | $7,903.90 | $671.34 |
| CPT 15860 | $1,440.53 | $51.45 |
| CPT 35761 | $5,698.68 | $206.00 |

50.     In the EOB it provided to both Dr. Tamburrino and L.K., United explained its denial as follows: (i) denial code PR54, which indicates "PATIENT RESPONSIBILITY – MULTIPLE PHYSICIANS/ASSISTANTS ARE NOT COVERED IN THIS CASE"; and (ii) denial code I2, which indicates "PAYMENT FOR THIS SERVICE IS DENIED. THE PROCEDURE CODE SUBMITTED WITH A MODIFIER -62 IS NOT ELIGIBLE FOR CO-SURGEON REIMBURSEMENT. THE PHYSICIAN OR HEALTH CARE PROFESSIONAL SHOULD

SUBMIT A CORRECTED CLAIM."

51.     On April 11, 2019, Dr. Tamburrino, through counsel, submitted a "First Level Member Appeal" on behalf of L.K. specifically challenging United's denial of benefits based solely on the Uniform DIEP Multiple Surgeon Denial Policy, and noting several generally-accepted coding guides, including one owned and operated by United, as recognizing service code S2068 as eligible for reimbursement when billed with the co-surgeon modifier.

52.     Dr. Tamburrino's office also placed calls and spoke with United representatives on 17 separate occasions between August 14, 2018 and August 5, 2019, to have Dr. Tamburrino's claim for services processed appropriately.

53.     On June 3, 2019, Dr. Tamburrino, again through counsel, submitted a "Second Level Member Appeal" for each claim to United on behalf of L.K. Dr. Tamburrino again challenged, among other things, the Uniform DIEP Multiple Surgeon Denial Policy.

54.     United never responded to the substance of Dr. Tamburrino's appeals on behalf of L.K.; instead baselessly refusing to consider them based upon L.K.'s alleged failure to not properly authorize Dr. Tamburrino to appeal on her behalf despite having been provided with a copy of the same DAR form annexed to this complaint on multiple occasions, as well as a duly-executed copy of the internal DAR form United itself provides.

55.     Thus, any administrative remedies that may be required to be pursued under ERISA have, therefore, been exhausted, should be deemed exhausted under applicable regulations, or would be futile under the circumstances, and are therefore excused as it related to Dr. Tamburrino's pursuit of benefits on behalf of his patient, L.K.

**C.     Dr. Theunissen's Claims and Appeals on Behalf of his Patient B.W.**

56.     B.W. is a 61-year-old United Member, with her health benefit plan sponsored by her spouse's employer, Weber Group, but administered by United.

57.     B.W. has a personal history of breast cancer and bilateral mastectomies with implant reconstruction. As a result of complications with her implants, B.W. underwent delayed bilateral breast reconstruction with deep inferior epigastric perforator (DIEP) flaps performed by Dr. Theunissen and Alireza Sadeghi, M.D. as co-surgeons, at Woman's Hospital in Baton Rouge, LA, on September 24, 2018. Prior authorization was received for these services under authorization no A052771777.

58.     On October 2, 2018, Dr. Theunissen submitted a bill to United for the services he personally rendered during B.W.'s DIEP flap reconstruction. The service codes were billed by Dr. Theunissen and paid by United as follows:

| Service Code | Billed Amount | Paid Amount |
| --- | --- | --- |
| HCPCS S2068-62-LT | $60,000.00 | $0.00 |
| HCPCS S2068-62-RT | $60,000.00 | $0.00 |
| CPT 21600-62 | $8,000.00 | $6,500.00 |

59.     In the EOB it provided to both Dr. Theunissen and B.W., United explained its denial as follows: (i) denial code PR54, which states that "PATIENT RESPONSIBILITY – MULTIPLE PHYSICIANS/ASSISTANTS ARE NOT COVERED IN THIS CASE"; and (ii) denial code KV, which states "THIS PROCEDURE CODE IS NOT ELIGIBLE FOR ASSISTANT SURGEON. THEREFORE BENEFITS ARE NOT PAYABLE."

60.     November 27, 2018, Dr. Theunissen, through his appeal service provider, submitted a "First Level Member Appeal" on behalf of B.W., specifically challenging United's denial of benefits based solely on the Uniform DIEP Multiple Surgeon Denial Policy, noting that the DIEP flap procedure requires two micro-surgeons and at times, both a first and second assist, working together in unison for approximately 8-12 hours, thereby rendering United's policy arbitrary and capricious.

61.     On December 24, 2018, United responded to Dr. Theunissen's First Level Member Appeal on behalf of B.W., did not address the substance of Dr. Theunissen's appeals on behalf of B.W.; instead baselessly refusing to consider it based upon B.W.'s alleged failure to not properly authorize Dr. Theunissen to appeal on her behalf despite having been provided with a copy of the same DAR form annexed to this complaint on multiple occasions, as well as a duly-executed copy of the internal DAR form United itself provides.

62.     On January 24, 2019, Dr. Theunissen, again through his appeal service coordinator, submitted a "Second Level Member Appeal" for each claim to United on behalf of B.W. Dr. Theunissen included a copy of the First Level Member Appeal that United previously ignored, as well as copies of DAR forms duly-executed by B.W.

63.     On February 14, 2019, United responded to Dr. Theunissen's Second Level Member Appeal, and this time addressed the substance of that appeal. Nevertheless, United upheld its prior denial, stating, in relevant part, that "Per UnitedHealthcare's Co-Surgeon/Team Surgeon Policy, this claim was processed correctly and no payment is due."

64.     Thus, any administrative remedies that may be required to be pursued under ERISA have, therefore, been exhausted, should be deemed exhausted under applicable regulations, or would be futile under the circumstances, and are therefore excused as it relates to Dr. Theunissen's pursuit of benefits on behalf of his patient, B.W.

## CLASS ALLEGATIONS

65.     United has adopted and implemented the Uniform DIEP Multiple Physician Denial policy, which is contrary to the terms and conditions of the applicable ERISA plans and in violation of ERISA. Plaintiffs' claims were not subject to unique policies but serve as a representative example of many insureds and their breast reconstruction surgeons whose claims for plan benefits were (and are) improperly denied by United.

66.     Plaintiffs, acting as Authorized Representatives of their patients L.K. and B.W., bring claims on behalf of a "Class" defined as follows:

> All women in the United States who were insured under an ERISA health insurance plan issued and/or administered by United who were denied plan benefits coverage for DIEP flap microsurgery when the performing physicians work as either assistant surgeons or as co-surgeons based on the Uniform DIEP Multiple Surgeon Denial Policy.

67.     The members of this proposed Class are so numerous as to make joinder of all members impractical. Although the precise numbers are currently known only to United, United insures approximately 115 million members and is the largest health care company in the world based on revenue. It can therefore reasonably be concluded that, at a minimum, thousands of insureds are impacted by these practices.

68.     There are questions of law or fact common to the class, including but not limited to whether United acted as a fiduciary when it engaged in the conduct at issue and whether United's conduct violated the written terms of its plans and/or United's fiduciary duties.

69.     Plaintiffs' claims are typical of the class's claims because, like other class members, they were denied plan benefits coverage for DIEP flap microsurgery billed with service code S2608 when the performing physicians work as either assistant surgeons or as co-surgeons based on the Uniform DIEP Multiple Surgeon Denial Policy.

70.     Plaintiffs will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and has no interests antagonistic to or in conflict with those of the Class.

71.     United has acted on grounds that apply generally to the class, as United has adopted and implemented the Uniform DIEP Multiple Physician Denial policy. As a result, enjoining

United from engaging in this practice and requiring it to provide plan benefits coverage for DIEP flap microsurgery billed with service code S2608 when the performing physicians work as either assistant surgeons or as co-surgeons would be appropriate, and, as detailed below, is part of the relief sought.

72.     Questions of law or fact common to the Class members predominate over any questions particular to individual class members. The overriding common question is whether United's Uniform DIEP Multiple Physician Denial policy is consistent with the terms and conditions of its plans and its fiduciary duties to its plan beneficiaries, and WHCRA, as adopted as part of ERISA, 29 U.S.C. § 1185b.

73.     In its role as a claim administrator for the plans at issue, and in serving as an ERISA fiduciary, United maintains records of when and how it receives, processes, and denies plan benefits coverage for DIEP flap microsurgery when the performing physicians work as either assistant surgeons or as co-surgeons. Accordingly, the members of the Class could be readily and objectively ascertained using United's records.

## COUNT I
## (CLAIM FOR RELIEF UNDER ERISA, 29 U.S.C. § 1132(a)(1)(B))

74.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

75.     This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

76.     United systematically violated the terms of the Class members' ERISA plans by adopting and implementing the Uniform DIEP Multiple Physician Denial policy.

77.     By ignoring plan terms and applying internal policies to justify adopting and implementing the Uniform DIEP Multiple Physician Denial policy, United also violated its fiduciary obligations under ERISA.

## COUNT II
## (CLAIM FOR RELIEF UNDER ERISA, 29 U.S.C. § 1132(a)(3)(A))

78.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

79.     This count is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), to enjoin United's acts and practices, as detailed herein. Plaintiffs bring this claim only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

80.     United systematically violated the terms of the Class members' plans, and its own fiduciary duties, by adopting and implementing the Uniform DIEP Multiple Physician Denial policy.

## COUNT III
## (CLAIM FOR RELIEF UNDER ERISA, 29 U.S.C. § 1132(a)(3)(B))

81.     Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

82.     This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B), to obtain appropriate equitable relief to redress United's violation of ERISA and of its plans. Plaintiffs bring this claim only to the extent that the Court finds that the equitable relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

83.     By engaging in the misconduct described herein, United financially benefitted in two ways. First, regarding fully-insured plans or plans that include a stop-loss provision requiring United to pay all benefits above a certain threshold, United avoided paying benefits out of its own funds. Second, regarding self-funded plans, United charged its corporate customers fees for serving as claims administrator while improperly denying benefits based on invalid reimbursement policies as detailed herein, and lowered costs for its corporate customers, allowing United to retain current customers and expand its business to new customers. United also benefitted by gaining additional fees from its self-insured customers through the Uniform DIEP Multiple Physician

Denial policy. These conflicts of interest subject United's acts to heightened judicial scrutiny.

84.     It would be inequitable to allow United to retain these benefits, considering United's misconduct. Thus, Plaintiff and the Class are entitled to appropriate equitable relief, including but not limited to an appropriate monetary award based on disgorgement, restitution, surcharge, unjust enrichment, or another basis, pursuant to 29 U.S.C. § 1132(a)(3)(B).

**WHEREFORE**, Plaintiffs demand judgment in their favor against United as follows:

A.     Certifying the Class and appointing Plaintiffs as Class Representatives;

B.     Declaring that United violated its legal obligations in the manner described herein;

C.     Permanently enjoining United from engaging in the misconduct described herein;

D.     Ordering United to repay all class members, with interest, for the amount of ONET benefits denied as a result of United's ERISA violations as alleged herein or, alternatively, ordering United to reprocess all wrongfully denied appeals in compliance with plan terms and without the improper reductions described herein;

E.     As an alternative remedy, ordering United to make an equitable payment to Plaintiff and members of the Class;

F.     Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

G.     Granting such other and further relief as is just and proper.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 AND 40.1

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action. In addition, I recognize a continuing obligation during this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, inter alia, injunctive relief.


Dated: June 21, 2021                              Respectfully submitted,

                                         /s/ John W. Leardi
                                         John W. Leardi
                                         Nicole P. Allocca
                                         Elizabeth A. Rice
                                         BUTTACI LEARDI & WERNER LLC
                                         212 Carnegie Center, Suite 202
                                         Princeton, New Jersey 08540
                                         609-799-5150

                                         Leslie Howard
                                         COHEN HOWARD, LLP
                                         766 Shrewsbury Ave., Suite 200
                                         Tinton Falls, NJ 07724
                                         732-747-5202

**Exhibit A**

## ASSIGNMENT OF BENEFITS/DESIGNATED AUTHORIZED REPRESENTATIVE

It is our policy, for your convenience, as well as to facilitate payment, to file health benefit claims on your behalf. To enable your insurance policy or benefit plan to deal with us directly, please read the following, sign and print your name below and enter today's date.

### Assignment of Benefits

I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any payments) under my health insurance policy or benefit plan to Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery PC (collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service. It is specifically intended by this assignment of benefits to assign to the fullest extent permitted under the law any and all of my rights, including without limitation, the right of one or more of the Providers to (i) execute, in my name and on my behalf, any form, document or instrument required under any applicable insurance policy or benefit plan to further evidence my intent as set forth herein and to avoid any delay in pursuing rights under applicable Federal and State law rules, regulations and requirements, (ii) pursue penalties for and exclusively on behalf of Providers against any insurance policy or benefit plan for failure of the plan administrator to timely produce or respond to requests (including appeals) for all information relating to any plan documents describing the rights under any insurance policy or benefit plan as required by any applicable Federal or State law, (iii) to endorse for me any checks made payable to me for benefits and claims collected toward my account, and/or (iv) to bring any appeal, lawsuit or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in the determination of benefits under my insurance policy or benefit plan.

Should this assignment be prohibited under my policy/plan, please disclose to Provider in writing such anti-assignment provision, otherwise this assignment shall be effective notwithstanding any anti-assignment clause in any policy/plan.

### Designated Authorized Representative

I hereby appoint as a Designated Authorized Representative each of my Providers and each of their respective assistant surgeons, physician assistants, teaching assistants, billing staff, lawyers (including the Law Offices of Cohen and Howard) or any other person or business that provides healthcare activity services as a "business associate" under the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"), and their respective designees (collectively referred to herein as an "Authorized Representative"). This authorization is intended to comply with all requirements of the Employment Retirement Income Security Act of 1974, as amended (ERISA") and any applicable State law. Each Authorized Representative is granted the same rights which I have as a member or beneficiary under my insurance policy or benefit plan, including without limitation:

1. The right of my Authorized Representative to file claims for benefits on my behalf and directly receive payment for benefits and non-benefits from any third-party payor under my insurance policy or benefit plan, including the right to penalties, interest and attorney fees.

2. The right of my Authorized Representative to communicate with insurers, plan fiduciaries, employers and plan and claim administrators relative to all my benefit information and private health information ("PHI" as further defined under HIPAA) and to share and exchange such information with a "covered person" or "business associate" as those terms are defined under HIPPA.

3. The right of my Authorized Representative to send and receive follow-up information and obtain all documentation that ERISA or any State law requires to be provided to me, including, without limitation, plan documents, explanation of benefits, adverse benefit determinations, all relevant documents involving my claim, identity of all persons involved in determining my claim and all documents relied upon in making any determination as to the payment of any amount under the applicable plan documents.

4. The right of my Authorized Representative to file any internal or external member appeal for payment of benefits under any applicable insurance policy or benefit plan.

5. The right of my Authorized Representative to pursue any rights, claim or cause of action through litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest and attorney fees.

### Release of Private Health Information

It is specifically intended that any Provider or Authorized Representative is authorized and directed to provide and release my PHI for purposes of exercising all rights and benefits set forth in this Assignment of Benefits/Designated Authorized Representative authorization to any "covered person" or "business associate", including third-party payors, internal and external utilization review organizations, regulatory review entities and other organizations and/or companies that may/will assist with claims processing/reimbursement. I also direct any plan or claim administrator or plan sponsor to share all PHI with any Provider or Authorized Representative and not to inhibit the exercise of rights under my insurance policy or benefit plan by requiring any further authorization signed by me.

I understand that I remain fully responsible for any billed charges remaining due for services provided to me by a Provider, including co-pays, co-insurance and deductibles. If I receive any check or other payment from an insurance company or third-party payor for services rendered to me by a Provider, I will immediately endorse the check over to the Provider or otherwise make payment to the Provider for the amount of payment received from such insurance company or third-party payor. I agree that if the Provider is required to pursue collection efforts against me for these amounts, I will be responsible for all legal fees, interest and costs associated therewith.

This Assignment of Benefits/Designated Authorized Representative authorization shall remain in full force and effect for all current and future dates of service, until such time that all rights have been exercised under applicable Federal and State law as determined by Providers. I may revoke or withdraw this authority upon written notice to the Providers. In the event of any revocation, I will be responsible for payment of all outstanding amounts then due to the Providers.




# UnitedHealthcare®

## Designation of Authorized Representative

| Member N: | REDACTED |
| Member's : | |

Name of Individual/Company/Law Firm being designated as the authorized representative
Joseph Tamburrino (Prestige Institute for Plastic Surgery) & Cohen Howard, LLP

| Designated Representative's Address | City | State | Phone |
|---|---|---|---|
| 766 Shrewsbury Ave, Suite 200 | Tinton Falls | NJ | 732-747-5202 |

Provider of Service
Joseph Tamburrino (Prestige Institute for Plastic Surgery)

Date(s) of Service or Proposed Service
06/26/18

I, **REDACTED**, do hereby
*Print the n........ ........ ...... .... .. ........... ... service or supply*

Joseph Tamburrin of Prestige Institute for Plastic Surgery & Cohen Howard, LLP
*Print the name of the person who is being authorized to act on the member's behalf*

to act as my authorized representative in requesting (check all that apply):
    _X_ a complaint     _x_ an appeal     _x_ documents

from UnitedHealthcare regarding the above-noted service or proposed service.

I understand and agree that:
- This authorization is voluntary;
- my health information may contain information created by other persons or entities including health care providers and may contain medical, pharmacy, dental, vision, mental health, substance abuse, HIV/AIDS, psychotherapy, reproductive, communicable disease and health care program information;
- I may not be denied treatment, payment for health care services, or enrollment or eligibility for health care benefits if I do not sign this form;
- my health information may be subject to re-disclosure by the recipient; and if the recipient is not a health plan or health care provider, the information may no longer be protected by the federal privacy regulation;
- this authorization will expire one year from the date I sign the authorization. I may revoke this authorization at any time by notifying UnitedHealthcare in writing; however, the revocation will not have an effect on any actions taken prior to the date my revocation is received and processed.

Signature of **REDACTED**

✗

If person sig...... ........ .... .. ........... ........ relationship (i.e., parent, legal representative)

*Legal Representatives signing this authorization on behalf of a member must furnish a copy of a health care power of attorney, or other relevant document that grants the applicable legal authority.*

REDACTED

## Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC

### LIMITED POWER OF ATTORNEY

I execute this power of attorney and appoint Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC as my agent and authorize Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC with the power to take any all action Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC deems necessary, in its sole discretion, to appeal and/or collect payment for Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC's medical and surgical services rendered to me. This power of attorney includes the power to commence and prosecute to final consummation or compromise, in my name, any appeals, suits, actions, arbitrations, and proceedings of any kind, under state and/or federal law (collectively "the Proceedings") against any person or entity including, without limitation, any fully or self-insured health insurance carrier, health insurance plan, governmental plan, automobile insurance carrier, workers' compensation carrier, liability insurance carrier, other insurance carrier, other plan, or payor, employer, corporation, limited liability company, individual, re-pricer, cost-containment company and/or administrator (collectively "the Responsible Parties").

I specifically authorize Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC and give Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC the power to retain an attorney of Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC's own choosing to commence and prosecute to final consummation or compromise, in my name, the Proceedings against the Responsible Parties.

I further grant limited power of attorney to Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC as my medical provider to receive and collect directly from the Responsible Parties any money or benefits due for the surgical, medical and/or healthcare services rendered to me by Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC and hereby instruct the Responsible Parties to pay directly any monies or benefits due you for the surgical, medical and healthcare services rendered to me by Dr. Joseph Tamburrino and Prestige Institute for Plastic Surgery, PC.



REDACTED

REDACTED

## **Exhibit B**

## ASSIGNMENT OF BENEFITS/DESIGNATED AUTHORIZED REPRESENTATIVE

It is our policy, for your convenience, as well as to facilitate payment, to file health benefit claims on your behalf. To ensure your insurance policy or benefit plan to deal with us directly, please read the following, sign and print your name below and enter today's date.

### Assignment of Benefits

I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefits rights (including the right to any payments) under my health insurance policy or benefit plan to Dr. Thornbuen and Aesthetic Plastic Surgery (collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service. It is specifically intended by this assignment of benefits to assign to the fullest extent permitted under the law any and all of my rights, including without limitation, the right of one or more of the Providers to (i) execute, in my name and on my behalf, any form document or instrument required under any applicable insurance policy or benefit plan to further evidence my intent as set forth herein and to avoid any delay in pursuing rights under applicable Federal and State law rules, regulations and requirements, (ii) pursue penalties for and exclusively on behalf of Providers against any insurance policy or benefit plan for failure of the plan administrator to timely produce or respond to requests (including appeals) for all information relating to any plan documents describing the rights under any insurance policy or benefit plan as required by any applicable Federal or State law, (iii) to endorse for me any checks made payable to me for benefits and claims collected toward my account, and/or (iv) to bring any appeal, lawsuit or administrative proceeding for and on my behalf, in my name against any person and/or entity involved in the determination of benefits under any insurance policy or benefit plan.

Should this assignment be prohibited under my policy/plan, please disclose to Provider in writing such anti-assignment provision, otherwise this assignment shall be effective notwithstanding any anti-assignment clause in any policy/plan.

### Designated Authorized Representative

I hereby appoint as a Designated Authorized Representative each of the Providers and each of their respective assistant surgeons, physician assistants, teaching assistants, billing staff, lawyers, or any other person or business that provides business activity services as a "business associate" (including Howard Healthcare Group) under the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"), and their respective designees (collectively referred to herein as an "Authorized Representative"). This authorization is intended to comply with all requirements of the Employment Retirement Income Security Act of 1974, as amended ("ERISA") and any applicable State law. Each Authorized Representative is granted the same rights which I have as a member or beneficiary under my insurance policy or benefit plan, including without limitation:

1. The right of my Authorized Representative to file claims for benefits on my behalf and directly receive payment for benefits and non-benefits from any third-party payor under my insurance policy or benefit plan, including the right to penalties, interest and attorney fees.
2. The right of my Authorized Representative to communicate with insurers, plan fiduciaries, employers and plan and claim administrators relative to all my benefit information and private health information ("PHI" as further defined under HIPAA) and to share and exchange such information with a "covered person" or "business associate" as those terms are defined under HIPAA.
3. The right of my Authorized Representative to send and receive followed information and obtain all documentation that ERISA or any State law requires to be provided to me, including, without limitation, plan documents, explanation of benefits, adverse benefit determinations, all relevant documents involving my claim, identity of all persons involved in determining my claim and all documents relied upon in making any determination as to the payment of any amount under the applicable plan documents.
4. The right of my Authorized Representative to file any internal or external member appeal for payment of benefits under any applicable insurance policy or benefit plan.
5. The right of my Authorized Representative to pursue any rights, claim or cause of action through litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest and attorney fees.

### Release of Private Health Information

It is specifically intended that any Provider or Authorized Representative is authorized and directed to provide and release my PHI for purposes of exercising all rights and benefits set forth in this Assignment of Benefits/Designated Authorized Representative authorization to any "covered person" or "business associate" including third-party payors, internal and external utilization review organizations, regulatory review entities and other organizations and/or companies that may/will assist with claims processing/reimbursement. I also direct any plan or claim administrator or plan sponsor to share all PHI with any Provider or Authorized Representative and not to inhibit the exercise of rights under my insurance policy or benefit plan by requiring any further authorization signed by me.

I understand that I remain fully responsible for any billed charges remaining due for services provided to me by a Provider, including co-pays, co-insurance and deductibles. If I receive any checks or other payment from an insurance company or third-party payor for services rendered to me by a Provider, I will immediately endorse the check over to the Provider or otherwise make payment to the Provider for the amount of payment received from such insurance company or third-party payor. I agree that if the Provider is required to pursue collection efforts against me for these amounts, I will be responsible for all legal fees, interest and costs associated therewith.

This Assignment of Benefits/Designated Authorized Representative authorization shall remain in full force and effect for all current and future dates of service, until such time that all rights have been exercised under applicable Federal and State law as determined by Providers. I may revoke or withdraw this authority upon written notice to the Providers. In the event of any revocation, I will be responsible for payment of all outstanding amounts then due to the Providers.

REDACTED

**Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC**

## LIMITED POWER OF ATTORNEY

I execute this power of attorney and appoint **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC** as my agent and authorize **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC** with the power to take any and all action **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC** deems necessary, in its sole discretion, to appeal and/or collect payment for **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC's** medical and surgical services rendered to me. This power of attorney includes the power to commence and prosecute to final consummation or compromise, in my name, any appeals, suits, actions, arbitrations,  and proceedings of any kind, under state and/or federal law (collectively "the Proceedings") against any person or entity including, without limitation, any fully or self-insured health insurance carrier, health insurance plan, governmental plan, automobile insurance carrier, workers' compensation carrier, liability insurance carrier, other insurance carrier, other plan, or payor, employer, corporation, limited liability company, individual, re-pricer, cost-containment company and/or administrator (collectively "the Responsible Parties").

I specifically authorize **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC** and give **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC** the power to retain an attorney of **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC's** own choosing to commence and prosecute to final consummation or compromise, in my name, the Proceedings against the Responsible Parties.

I further grant limited power of attorney to **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC** as my medical provider to receive and collect directly from the Responsible Parties any money or benefits due for the surgical, medical and/or healthcare services rendered to me by **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC** and hereby instruct the Responsible Parties to pay directly any monies or benefits due you for the surgical, medical and healthcare services rendered to me by **Dr. Taylor B. Theunissen and Taylor B. Theunissen MD, LLC.**



Date

