<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH F. TAMBURRINO, M.D., as an assignee and authorized representative of his patient L.K., and BARBARA WILLIAMS, on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No: 21-12766 (SDW)(ESK)<br><br>**OPINION**<br><br><br>January 26, 2023 |

**WIGENTON**, District Judge.

Before this Court is Defendant United Healthcare Insurance Company's ("Defendant") Motion to Dismiss (D.E. 42) certain of the claims in Plaintiffs Joseph Tamburrino, M.D. and Barbara Williams's (collectively, "Plaintiffs") Second Amended Class Action Complaint, (D.E. 37, "SAC"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

    **I.**    <u>**FACTUAL HISTORY**</u>

Plaintiff Dr. Tamburrino is a board-certified plastic surgeon based in Pennsylvania. (*See* D.E. 37 ¶¶ 10, 12.) On or about June 26, 2018, Dr. Tamburrino and a co-surgeon, Dr. Keith M.

1

Blechman, performed a post-mastectomy breast reconstruction surgery[1] on L.K., a patient enrolled in a health insurance plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and allegedly administered by Defendant. (*Id.* ¶¶ 42–43, 50.) L.K. executed an assignment of benefits and a designation of authorized representative form in favor of Dr. Tamburrino for any claims, appeals, and litigation associated with the surgery. (*Id.* ¶ 13.) After the surgery, Dr. Tamburrino billed Defendant for the services he rendered, but Defendant denied reimbursement for fees related to Dr. Blechman because co-surgeon fees were not eligible for reimbursement under the plan. (*Id.* ¶¶ 44–45.) Dr. Tamburrino twice appealed Defendant's decision, but Defendant "refus[ed] to consider them." (*Id.* ¶¶ 46–49.)

Plaintiff Barbara Williams is also a patient enrolled in a health insurance plan governed by ERISA and allegedly administered by Defendant. On or about September 24, 2018, Drs. Taylor Theunissen and Alireza Sadeghi performed, as co-surgeons, a post-mastectomy DIEP surgery on Barbara Williams. (*Id.* ¶¶ 51.) After the surgery, Dr. Theunissen billed Defendant for the services he rendered. (*Id.* ¶¶ 52–53.) Defendant denied reimbursement for services performed by Drs. Theunissen and Sadeghi because they had operated as co-surgeons. (*Id.*) Dr. Theunissen appealed Defendant's decision, but Defendant upheld the denial. (*Id.* ¶¶ 54–57.)

## II.  PROCEDURAL HISTORY

On June 21, 2021, then-named Plaintiffs[2], Dr. Tamburrino and Dr. Theunissen, instituted this putative class action challenging then-named Defendants' alleged "uniform claim processing

---

[1] Specifically, Drs. Tamburrino and Blechman performed a delayed bilateral breast reconstruction with deep inferior epigastric perforator ("DIEP"). (*Id.* ¶¶ 43, 51.)

[2] The original complaint and the FAC named as plaintiffs Drs. Joseph Tamburrino and Taylor Theunissen. (*See generally* D.E. 1, 28.) The named plaintiffs in the SAC are Dr. Joseph Tamburrino and Barbara Williams. (*See generally* D.E. 37.)

2

and reimbursement policy that denies coverage to United members whose plastic surgeons perform post-mastectomy DIEP flap microsurgery as either assistant surgeons or as co-surgeons."[3] (D.E. 1 ¶ 6.) Defendants moved to dismiss the original complaint. (D.E. 11.) In response, Plaintiffs opposed Defendants' motion and cross-moved for leave to file an amended complaint, (D.E. 25), which this Court granted, (D.E. 26). On October 11, 2021, the same Plaintiffs filed a three-count First Amended Class Action Complaint ("FAC") alleging wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) (Count I), a claim for equitable relief under 29 U.S.C. § 1132(a)(3)(A) (Count II), and a claim for equitable relief under 29 U.S.C. § 1132(a)(3)(B) (Count III).[4] (*See generally* D.E. 28.) On November 10, 2021, the same then-named Defendants again moved to dismiss all of Dr. Theunissen's claims, all claims against UnitedHealth Group Inc., United Healthcare Services, Inc., United Healthcare Service LLC, Oxford Health Plans, LLC, and Oxford Health Insurance, Inc., and Counts II and III. (D.E. 31.) The parties timely briefed the motion. On April 25, 2022, this Court granted Defendants' motion to dismiss and specifically provided Plaintiffs with "one final opportunity to amend the complaint" to cure the deficiencies therein. (D.E. 35 at 12.)

On May 25, 2022, Plaintiffs Dr. Tamburrino and Barbara Williams filed the SAC, in which they allege the same three counts as in the FAC against only Defendant United Healthcare Insurance Company. (D.E. 37.) On June 22, 2022, Defendant moved to partially dismiss the SAC because Plaintiffs failed to adequately plead a breach of fiduciary duty by Defendant or any other

---

[3] The original complaint and the FAC named as defendants the following six entities: United Healthcare Insurance Company, UnitedHealth Group Inc., United Healthcare Services, Inc., United Healthcare Service LLC, Oxford Health Plans, LLC, and Oxford Health Insurance, Inc. (*See generally* D.E. 1, 28.) The sole defendant named in the SAC is United Healthcare Insurance Company. (*See generally* D.E. 37.)

[4] Hereinafter, 29 U.S.C. § 1132(a) will be referred to as ERISA § 502(a).

theory of liability that would warrant additional equitable relief under Section 502(a)(3) (Counts II and III).  The parties timely completed briefing.

### III. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard).  "[A] complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  If "the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### IV. DISCUSSION

Plaintiffs bring claims for benefits under Section 502(a)(1)(B) (Count I) and for additional equitable relief under Section 502(a)(3) (Counts II and III).[5] (D.E. 37 ¶¶ 68–75.) As the Third Circuit explained, "section 502(a)(1)(B) is the means by which an ERISA plan beneficiary is authorized to sue to recover benefits under the plan." *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 211 (3d Cir. 1998). Meanwhile, Section 502(a)(3) serves as a "general 'catchall' . . . offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *see also Atl. Neurosurgical Specialists P.A. v. United Healthcare Grp. Inc.*, 20-13834, 2022 WL 17582546, at *8 (D.N.J. Dec. 12, 2022) (explaining that "claims pursuant to [Section 502](a)(3)(A) . . . permit[] a participant, beneficiary, or fiduciary 'to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan'" (quoting 29 U.S.C. § 1132(a)(3)(A))); *Fotta*, 165 F.3d at 211 ("ERISA section 502(a)(3)(B) permits a plan beneficiary 'to obtain other appropriate relief (i) to redress [violations of ERISA or of the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan.'" (alteration in original) (quoting 29 U.S.C. § 1132(a)(3)(B))). Although Section 502(a)(3) is a "general catchall," the Supreme Court has observed that relief under Section 502(a)(3) must be limited to "'*appropriate*' equitable relief" and "that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Varity Corp.* at 515 (citation omitted).

---

[5] Defendant does not move to dismiss Plaintiffs' claims for benefits under § 502(a)(1)(B). (D.E. 42-1 at 9 n.1, 12.)

5

Since the *Varity Corp.* decision, "[t]here [has been] a split among circuits and within this district as to the effect of [that holding] . . . on a plaintiff's ability to simultaneously pursue claims" under Sections 502(a)(1)(B) and 502(a)(3).[6] *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 574 (D.N.J. 2008). Several courts have dismissed Section 502(a)(3) claims "where the claim for 'appropriate equitable relief' . . . [wa]s duplicative of a claim for benefits due under Section 502(a)(1)(B)." *Laufenberg v. Ne. Carpenters Pension Fund*, No. 17-1200, 2019 WL 6975090, at *10 (D.N.J. Dec. 19, 2019) (collecting cases). Other courts, though, have allowed plaintiffs to pursue additional relief under Sections 502(a)(1) and 502(a)(3) at the motion to dismiss stage. *See, e.g.*, *Devito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 534 (D.N.J. 2008) ("Several cases in this circuit have concluded that claims under [Section 502(a)(3)] are not properly dismissed at the motion to dismiss stage merely because a plaintiff has also brought a claim under [Section 502(a)(1)(B)]." (collecting cases)).

As stated in this Court's earlier Opinion dismissing the FAC, "[w]hile this Court has permitted parties to alternatively plead breach of fiduciary duty claims under § 1132(a)(3) and denial of benefits claims under § 1132(a)(1), it did so where the complaint identified the fiduciary duty at issue." (D.E. 35 at 9); *see, e.g.*, *Univ. Spine Ctr. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-8711, 2018 WL 678446, at *2 (D.N.J. Feb. 2, 2018). In other words, to alternatively plead claims under Sections 502(a)(1) and 502(a)(3), a plaintiff must allege a breach of fiduciary

---

[6] Chief Judge Wolfson's analysis in *Plastic Surgery Center, P.A. v. Cigna Health & Life Ins. Co.*, illustrates this split in authority. No. 17-2055, 2018 WL 2441768, at *13–*14 (D.N.J. May 31, 2018). "On one hand, several courts have held that *Varity* does not impose a bright-line rule mandating the dismissal of § 502(a)(3) claims whenever a § 502(a)(1)(B) claim is also brought." *Id.* at *13 (collecting cases). "Other courts have held that dismissal is warranted, even at the motion to dismiss stage, where a plaintiff asserts claims for equitable relief under § 502(a)(3) that are duplicative of his or her claims for benefits under § 502(a)(1)(B)." *Id.* at *14 (collecting cases). "These courts have found that prohibiting a plaintiff from proceeding under § 502(a)(3), when relief is otherwise available under § 502(a)(1)(B), is consistent with the Third Circuit's instruction 'that a court must apply ERISA § 502(a)(3)(B) cautiously when an individual plan beneficiary seeks "appropriate equitable relief."'" *Id.* (quoting *Ream v. Frey*, 107 F.3d 147, 152–53 (3d Cir. 1997)). Chief Judge Wolfson then dismissed the plaintiff's Section 502(a)(3) claim because it was "wholly duplicative of" the plaintiff's claims for benefits. *Id.*

6

duty or some violation of ERISA or the plan terms—distinct from a wrongful denial of benefits claim—for which additional equitable relief is appropriate. However, where a claim pursuant to Section 502(a)(3) is "wholly duplicative" of a claim brought under Section 502(a)(1) "in that it is based on the same conduct and seeks relief otherwise available under §§ 502(a)(1)(B) . . . of ERISA," "dismissal of [the p]laintiff's § 502(a)(3) claim is warranted." *Plastic Surgery Center, P.A.*, 2018 WL 2441768, at *14.

Upon dismissing Plaintiffs' FAC, this Court allowed Plaintiffs "one final opportunity to amend their complaint" to cure the deficiencies therein. (D.E. 35 at 12.) Plaintiffs now assert that they are entitled to additional equitable relief under Section 502(a)(3) because Defendant allegedly breached its duty of loyalty and violated the Women's Health and Cancer Rights Act (WHCRA). (D.E. 37 ¶¶ 7, 70; D.E. 47 at 11, 13, 16.) Plaintiffs have failed to adequately plead either, and accordingly, Counts II and III must be dismissed.

### A. Breach of Fiduciary Duty

Defendant argues that the SAC fails to cure the deficiencies that this Court specifically identified in its earlier Opinion—namely, that Plaintiffs have not adequately pled a breach of a fiduciary duty or any other theory of liability that would warrant additional equitable relief under Section 502(a)(3).[7] (D.E. 42-1 at 16–19; D.E. 48 at 6–14.) In granting the motion to dismiss the FAC, this Court indeed found that "the [FAC] d[id] not specify the fiduciary duties Defendants allegedly breached." (D.E. 35 at 9.) Rather, the FAC "merely allege[d], in conclusory fashion,

---

[7] Plaintiffs concede that they do not—and indeed cannot—bring a breach of fiduciary duty claim under Section 502(a)(1)(B). *See, e.g.*, D.E. 47 at 13 ("Plaintiffs, however, do not (and could not) bring a breach of fiduciary duty claim under § 502(a)(1)(B)."); *see also Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *9 (D.N.J. Oct. 31, 2018) ("[T]he Third Circuit held '[Section] 502(a)(1)(B) does not create a private cause of action for breach of fiduciary duty.'" (second alteration in original) (quoting *Michaels v. Breedlove*, No. 03-4891, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004))). At issue here is whether Plaintiffs have adequately pled a breach of the fiduciary duty of loyalty under Section 502(a)(3) (Counts II and III).

7

that 'United systematically violated the terms of the Class members' plans, and its own fiduciary duties, by adopting and implementing the Uniform DIEP Multiple Physician Denial Policy.'" (*Id.*) Similar deficiencies now doom Counts II and III in Plainitffs' SAC.

To state a claim for breach of fiduciary duty under § 502(a)(3), a plaintiff "must plausibly allege three elements: that the defendant was a fiduciary under the Plan, that the defendant breached a fiduciary duty, and that the breach harmed [the plaintiff]." *Univ. Spine Ctr. v. Aetna Inc.*, No. 17-8160, 2018 WL 1409796, at *7 (D.N.J. Mar. 20, 2018). Here, Defendant does not dispute that it is a fiduciary, and therefore, this Court's inquiry focuses on the latter two elements— whether Defendant breached a fiduciary duty that, in turn, harmed Plaintiffs.

Plaintiffs assert—in only one paragraph of the SAC—that Defendant breached its duty of loyalty. (D.E. 37 ¶ 71.) That conclusory assertion is unavailing. ERISA imposes upon fiduciaries a duty of loyalty, which requires that fiduciaries "act 'with an eye single toward beneficiaries' interests.'" *McGowan v. Barnabas Health, Inc.*, No. 20-13119, 2021 WL 1399870, at *7 (D.N.J. Apr. 13, 2021) (quotation marks and citations omitted) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000)). "To plead a loyalty claim, courts look for allegations suggesting that the fiduciary made decisions benefitting itself or a third party." *Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 541 F. Supp. 3d 496, 513 (D.N.J. 2021) (citation omitted). A plaintiff cannot overcome a motion to dismiss, however, by pleading that a defendant-insurance company breached its duty of loyalty when it "enforce[d] the terms of an insurance policy." *Minerley v. Aetna, Inc.*, No. 13-1377, 2019 WL 2635991, at *10 (D.N.J. June 27, 2019). Moreover, a plaintiff does not adequately plead a breach of the fiduciary duty of loyalty by generally asserting that a defendant-insurance company has an inherent conflict of interest each time it denies claims. *See, e.g.*, *Cho v. Prudential Ins. Co. of Am.*, No. 19-19886, 2021 WL 4438186, at *11 (D.N.J. Sept. 27, 2021)

8

("[A] plan fiduciary does not breach its duty of loyalty simply by offering the plan sponsor's financial products; rather a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." (quoting *Patterson v. Morgan Stanley*, No. 16-6568, 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019))).

Here, Plaintiffs assert that Defendant breached its "duty of loyalty, by elevating its own interest . . . in denying claims submitted to its fully-insured ERISA plans, and those of its self-insured employer customer, above the interests of plan members, and the duty to act in accordance with the written terms of its ERISA plans." (D.E. 37 ¶ 71.) Plaintiffs contend that Defendant has "an inherent conflict of interest based upon the financial incentives that flow from: (i) denying claim payments from for [sic] fully-insured ERISA plan[s]; or (ii) administrative fees and/or shared savings payments it receives from its self-insured clients for denying or limiting claim payments." (*Id.* ¶ 28.) Plaintiffs' SAC, however, falls far short of alleging "plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Cho*, 2021 WL 4438186, at *11. Indeed, Plaintiffs do not plead any facts sufficient to suggest that Defendant "acted with improper motive or for [its] financial benefit." *Id.*; *see also Luense*, 541 F. Supp. 3d at 513 ("Absent from the Complaint are any facts to suggest that the [fiduciary] was acting for its own benefit or for the benefit of a third party."). Plaintiffs instead rely on a passing reference to the duty of loyalty and legal conclusions. (D.E. 37 ¶ 71.) It is axiomatic that such pleadings are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Even if Plaintiffs had adequately pled a breach of the duty of loyalty, "the Third Circuit found that 'a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.'" *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 607 (D.N.J. 2011) (quoting *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 254 (3d Cir. 2002)). Moreover, where a complaint "contains no allegations that differentiate the [plaintiff's] claim of breach of fiduciary duty . . . from his claim for benefits," and "does not seek 'additional relief' otherwise not provided for in § 502(a)(1)," the claim under § 502(a)(3) will be dismissed as "duplicative." *Id.* at 607–08 ("In essence, Count III [the claim for breach of fiduciary duty] is duplicative of Count I [the claim for benefits], wherein the [beneficiary] alleges that he is owed more benefits under the [p]lan.").

At bottom, Plaintiffs here contend that Defendant breached its duty of loyalty by "denying claims submitted to its fully-insured ERISA plans." (D.E. 37 ¶ 71.) In turn, Plaintiffs seek relief in the form of an order to "reprocess all wrongfully denied claims in compliance with plan terms"—which, Plaintiffs argue, constitutes equitable relief. (*Id.* at 20.) First, Plaintiffs concede that "[s]uch a reprocessing order could be available under § 502(a)(1)(B)." (D.E. 47 at 23–24). Second, Section 502(a)(3) only allows for equitable relief, and the Supreme Court has expressly rejected the notion that "an injunction to compel the payment of money past due under a contract, or specific performance of a past monetary obligation" constitutes appropriate equitable relief under Section 502(a)(3).[8] *Knudson*, 534 U.S. at 212. In sum, Plaintiffs do not adequately plead

---

[8] In *Knudson*, the Supreme Court drew a distinction between an order for "specific performance of a *contractual* obligation to pay *past* due sums," and "an injunction to correct the method of calculating payments going forward." 534 U.S. at 212. Here, however, Plaintiffs have conceded that they do not have standing for prospective relief—*i.e.*, an injunction to correct future payment calculations—and instead seek only retrospective relief—*i.e.*, an order that Defendant reprocess claims for past co-surgeon fees as obligated under the terms of the plan. (D.E. 25-1 at 22–23 n.2.)

"allegations that *differentiate* [their] claim[s] of breach of fiduciary duty . . . from [their] claim[s] for benefits" under Section 502(a)(1), and they do not seek "additional relief" under section 502(a)(3). *Cohen*, 820 F. Supp. 2d at 607–08 (emphasis added). Accordingly, Plaintiffs' claims for breach of fiduciary duty under Counts II and III must be dismissed.

### B. Violation of WHCRA

Plaintiffs next contend that their "invocations" of WHCRA permit them to pursue additional equitable relief under Section 502(a)(3). (D.E. 47 at 34.) Plaintiffs assert that "United Plans must cover breast reconstruction after a mastectomy under the [WHCRA],"—which "(i) requires that post-mastectomy breast reconstruction surgery be a covered benefit under the terms of United's Plans; and (ii) prohibits United from placing unreasonable restrictions or limitations on reimbursement for post-mastectomy reconstruction," (D.E. 37 ¶¶ 3, 35)—and that "leav[ing] . . . patients financially responsible for most of their chosen course of intervention based on a coding technicality is unfathomable, to say nothing of violative of WHCRA," (*id.* ¶ 7). Plaintiffs then seek relief in multiple forms: one order "[p]ermanently enjoining [Defendant] from" violating WHCRA and another order requiring Defendant "to reprocess all wrongfully denied claims" and (D.E. 37 at 20; D.E. 47 at 17.) Plaintiffs, however, have not adequately alleged an underlying violation of WHCRA for which equitable relief is appropriate.

In enacting WHCRA, "Congress sought 'to ensure that women who underwent mastectomies would not be denied coverage for reconstructive surgery on the ground that it was cosmetic." *Prestige Inst. for Plastic Surgery, P.C. v. Keystrone Healthplan E.*, No. 20-496, 2020 WL 7022668, at *9 (D.N.J. Nov. 30, 2020) (quoting *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 626 (2d Cir. 2008)); *see generally* 29 U.S.C. § 1185b. However, "Congress did not mandate 100 percent coverage of [post-mastectomy breast reconstruction] surgeries, irrespective of the

11

other generally applicable terms of the plan." *Prestige Inst. for Plastic Surgery, P.C*, 2020 WL 7022668, at *9 (quoting *Krauss*, 517 F.3d at 626–27). Indeed, WHCRA neither "specif[ies] the level of benefits that must be provided" nor "bars the application of lower reimbursement rates for breast reconstruction surgery," so long as the denial of benefits is done "in a manner 'consistent' with the policies 'established for other benefits under the plan.'" *Id.* (quoting *Krauss*, 517 F.3d at 625); 29 U.S.C. § 1185b(a).

Here, Plaintiffs do not allege that Defendant discriminately refused to reimburse co-surgeon fees for breast reconstruction surgery. Instead, Plaintiffs merely restate the requirements of WHCRA and generally aver that Defendant wrongfully denied claims for co-surgeon fees. (D.E. 37 ¶¶ 3, 7, 35.) Such conclusory allegations, without more, are insufficient to plead a violation of WHCRA. *See, e.g.*, *Prestige Inst. for Plastic Surgery, P.C.*, 2020 WL 7022668, at *9 (holding that a plaintiff failed to state a claim where "Plaintiffs concede that Defendants provided some coverage . . . but submit that they were improperly under-reimbursed under the WHCRA"). Therefore, Plaintiffs have failed to allege a violation of WHCRA warranting additional equitable relief under Section 502(a)(3).

Because Plaintiffs have failed to allege a fiduciary duty or any other theory of liability for which they are entitled to equitable relief under § 502(a)(3), Counts II and III must be dismissed in their entirety.[9]

---

[9] On January 10, 2023, Plaintiffs filed a notice of supplemental authority (D.E. 50), in which Plaintiffs directed this Court to a recently authored opinion by Judge McNulty, *Atlantic Neurosurgical Specialists P.A. v. United Healthcare Group, Inc.*, No. 20-13834, 2022 WL 17582546, at *9 (D.N.J. Dec. 12, 2022). Plaintiffs contend that *Atlantic Neurosurgical Specialists* is supportive of their position. (D.E. 50.) This Court has considered the supplemental authority, but it does not alter this Court's conclusion in the present case. In *Atlantic Neurosurgical Specialists*, Judge McNulty denied a motion to dismiss because, *inter alia*, "at the pleading stage, it is premature to dismiss claims brought under § 502(a)(3) as 'duplicative' of claims brought under § 502(a)(1)(B) when the plaintiff seeks other appropriate equitable relief under § 502(a)(3)." 2022 WL 17582546, at *9. Judge McNulty based his decision on the holding in *Shah v. Aetna*, a case in which Chief Judge Simandle held that "dismissal of *an ERISA breach of fiduciary duty claim* on this basis is not appropriate at this early procedural stage." No. 17-195, 2017 WL 2918943, at *2 (D.N.J. July 6, 2017) (emphasis added); *see Atl. Neurosurgical Specialists P.A.*, 2022 WL 17582546,

V. **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss Counts II and III in Plaintiffs' SAC is **GRANTED with prejudice**. An appropriate order follows.

                                                                         /s/ Susan D. Wigenton
                                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Edward S. Kiel, U.S.M.J.
             Parties

---

at *9. Consistent with Chief Judge Simandle, this Court has previously explained that a plaintiff is permitted "to alternatively plead breach of fiduciary duty claims under § 1132(a)(3) and denial of benefits claims under § 1132(a)(1), . . . where the complaint identified the fiduciary duty at issue." (D.E. 35 at 9.) Here, however, Plaintiffs have pled neither a breach of fiduciary duty nor any other violation by Defendant distinct from Defendant's denial of benefits, and consequently, they cannot pursue duplicative claims under §502(a)(3).